May it please the court. My name is Emily Harrell and I represent appellant Kareem Doctor. South Carolina strong-arm robbery does not meet the definition of a violent felony under the force clause of the Armed Career Criminal Act for three reasons. First, South Carolina strong-arm robbery is an overbroad and indivisible offense which can be committed by either a de minimis use of actual force or constructive force, neither of which is necessarily equivalent to the level of physical force required to bring South Carolina strong-arm robbery under the Act's force clause. Second, the force clause of South Carolina strong-arm robbery lacks any specified mens rea. Therefore, this element can be satisfied by a mens rea of either criminally negligent or reckless conduct, both of which are insufficient under this court's precedent to qualify the offense as a violent felony under the ACCA. Can you give us an example of how a robbery in South Carolina would involve a negligent use or threatened use of force? Well, if I... Is that necessary? I mean, obviously, it has to be more than a theoretical possibility, right? That's correct, Your Honor, and I don't have a specific example of that, but... Well, does that suggest that you're really talking about theories as opposed to practicality? In theory, yes. Yes, Your Honor. Well, that doesn't help you, does it? It does not, but I would say that, in theory, one could negligently or recklessly back over someone while stealing their car, just as in Dixon. But South Carolina law... It's a common law of crime. Is there any case law that indicates that the South Carolina courts have convicted under negligent behavior or anything less than intentional behavior? No, sir, there's not. But there is not any law that says that you couldn't be. Well, but if... What I'm saying is, you know, the Supreme Court has urged us to exercise common sense in these matters. We agreed we're applying the categorical approach, are we not? Yes, Your Honor. And if there's no case out there, I mean, just the common sense of the matter would be that a strong-arm robbery would either be accomplished by a violent force or by intimidation. And I don't know of many strong-arm robberies that are negligently carried out. The whole idea is to apply violence or a threat of violence in order to get someone to part with their valuables. It could be, Your Honor, that under a common law definition of force, that you could divert someone's attention and turn around and steal their car and negligently or recklessly back over them as you were fleeing. But that's never in the set... But that's in the realm of hypothetical. That's correct. It hasn't... No, sir. No, Your Honor. I mean, in real life, it hasn't happened. That's correct. Okay. Okay. The third reason that South Carolina strong-arm robbery does not meet the definition of the force clause of ACCA is that it lacks an element requiring that the force that's being used be against the person of another. As you probably know, South Carolina defines strong-arm robbery as the felonious or unlawful taking of money, goods, or other personal property of value from the person of another by violence or by putting the person in fear. Putting a person in fear is when an ordinary, reasonable person in the victim's position would feel a threat of bodily harm from the perpetrator's acts. This offense is overbroad and indivisible because South Carolina juries are not instructed that they have to decide whether the perpetrator used actual force or constructive force. It's combined in one element. So it's an overbroad offense. And it can be committed by constructive force, which is very de minimis. And I think the perfect case in this area is the Roseman case in which the defendant simply glared at the victim. She fled, as it were, and hid behind a nearby freezer door. And he then the actual force that he used was against the cash registers when he flipped them up in the air. He was convicted based on his constructive use of force against her. So she ran behind a freezer door because just for the sake of it? The way he looked. If you were a store clerk and someone was coming in and you ran behind the freezer door, wouldn't you feel threatened or intimidated? I mean, normally that doesn't really happen. The robbery was to get her to part with the money. It wasn't against the—the object of the robbery was not the cash register. It was to get her to part with her money against her will. Well, that's true, but his use of constructive force was simply glaring at her. He did not say anything. He did not move toward her. He—just the way he looked at her. And that's not sufficient under the force clause of the Armed Career Criminal Act. That's not intimidation? It's intimidation, but it's common law intimidation, which is— Doesn't intimidation match up with the use of the word threatened in the force clause? Not in this sense, Your Honor, because intimidation can be committed by this de minimis use of force, and it's how an ordinary reasonable person would feel. That doesn't show you the objective actions of the defendant. It doesn't— I'm not sure why intimidation doesn't match up with threat. Because it results in how the victim, under South Carolina law, it's based on how the victim feels versus the objective actions of the— and provable actions of the defendant himself. Well, you don't want to use that case, then, because we know how she felt. She fled and was trying to find refuge, right? That's correct. But I think the standard has to be that the defendant knew his actions were objectively intimidating. Don't you think so in these circumstances? I mean, you walk into the place and you glare at the cashier and that kind of thing. What would you need to do? I think you would have to—there would have to be some evidence that the defendant knew that his actions were intimidating. And there's—this case is based on how the victim felt. It's not based on— Picking up the cash register and throwing it down in the store, that wouldn't be some indication that something is awry? It could be. But the Armed Career Criminal Act's force clause says that the force used has to be against the person of another. And so the intimidation and the— That's what the chief judge's question indicated. It has to be against the person of another, but the person is right there behind the counter, the cashier or the store clerk. I mean, these— There's no doubt in my mind how the store clerks at these convenience stores felt or what the intruder intended. Whether you look at it from the standpoint of the victim or the intruder, there's a meeting of the minds. I want your money. You don't want to give it to me, but you better. I think it has to be that the elements of the offense are such that the use of force meets the standard of the ACCA's force clause. And our position is that the South Carolina cases, particularly this one, under constructive force, do not meet the requirement that the force be substantial violent force. Well, the South Carolina court said in Rosalynn that a reasonable person, quote, would have felt the threat of bodily injury from Petitioner's Act. So, you know, the South Carolina cases are simply different from the North Carolina cases. The North Carolina cases explicitly contemplate the fact that a conviction can be reached by the use of some minimal force. But the South Carolina law, it's not copious, I agree. But the statement in Rosalynn seems to match up a bit with the language of the force clause. The Supreme Court would have felt a threat of bodily injury from Petitioner's Act. That's force clause language. Well, Your Honor, the South Carolina Court of Appeals version of the Rosalynn case indicates that the constructive force is accomplished by all demonstrations of force, no matter how slight. And so it's our position that that possibility takes the constructive force element of this offense beyond ACCA's force clause. Additionally, their actual force possibility is based on a de minimis use of force as well. There are at least two cases, even cited in the government's brief, where there was a de minimis use of force that cannot meet ACCA's force clause. In the Gagub case, the individual pulled on the victim's arm, looked at her in an unkind manner, threw some groceries on the ground, and made off with her purse. And the Humbert – So that is – what court is that? That's the South Carolina Court of Appeals. And the Humbert case, the defendant was convicted upon having grabbed the victim's arm and placing something in her back. She never saw a weapon. She didn't know what it was. And then he proceeded to the cash register and emptied it. So those demonstrations of actual force are de minimis and therefore takes the – But the force clause doesn't use the word – just doesn't confine itself to the word actual, uses the word threatened. Correct. But my position – our position is the threatened use of force under South Carolina law is not sufficient, but also an actual use of force is overbroad, and therefore, because the offense is overbroad and indivisible – What's overbroad about actual use of force? I'm not reading you. I'm sorry. The offense itself, strong-arm robbery, is overbroad because a jury doesn't have to decide whether the defendant used actual force or constructive force in accomplishing his or her task. Did you actually argue in your briefs that robbery in South Carolina can be accomplished through de minimis force? Was that – I may have missed that. I don't think you made that point. I did not make that point, but it's raised in – those cases are in the government's brief, and so I thought it prudent to make sure that – Are you – I may ask your colleague as well, but are you familiar with the South Carolina pattern jury instructions that suggest that with respect to this offense, the jury is to be instructed that the degree of force used is immaterial? No, Your Honor. I was not aware of that. That might be helpful. It might be helpful. Thank you so much. Those pattern instructions have recently been removed from the Supreme Court's website. I'm not entirely sure why it was removed after both of our briefs were filed, so I can't speak to that. Okay. So. Can I – may I – a related question. Is it your position that the law is crystal clear here so that we can decide this issue? I mean, North Carolina's case law was fairly clear, which led to the result in Gardner, but might this not be a case that could be certified to the Supreme Court to give us some guidance as to exactly what common law robbery means in this context? Your Honor, I see that my time is up. May I answer your question? Yes. I believe that the issue is clear because of the Roseman case,  which certainly cannot in any form be, you know, the threatened use of physical force, and based on the actual force cases under which a de minimis use was employed. So I think it's very clear.  Thank you, counsel. Mr. Daly. May it please the Court. Robert Daly on behalf of the United States. South Carolina common law robbery, strong arm robbery, is a violent felony under the force clause, and the reason why that is is because this case is actually controlled by the McNeil case. If you look at the definition of intimidation in McNeil, it cites the Wagstaff case, uses that specific language, whether an ordinary reasonable person in the victim's position could infer a threat of bodily harm from the defendant's acts. That is the identical definition used by the South Carolina Supreme Court in Roseman. I suppose you can accomplish a bank robbery with a minimum of actual force. It's accomplished, by and large, by threatened force. And the same thing with South Carolina strong arm robbery. Is that your view? It is, Your Honor. And again, if you look at the definitions, there's no, unlike, say, North Carolina, there's no question that these are on par. They are the identical standard. There's no sound basis to conclude somehow that the intimidation element in South Carolina robbery is different than the intimidation element in federal bank robbery. It is, at least in the four circuits, it's identical. And part of the reason why the standard that was used in the court of appeals decision isn't binding on this court is because the South Carolina Supreme Court changed that standard by adopting the Wagstaff standard of intimidation. So that's the reason to start with that you are, I mean, McNeil should be your guide. The next point, though, is... ...robbery under the statute is a general intent crime. How does that change the analysis? I don't know. I mean, I think it's the same standard. In South Carolina, the larceny aspect of robbery is actually a specific intent crime. So, but clearly if you look at the examples we cited in the brief, there's no instance where a defendant, none of the factual circumstances present an instance where there'd be somebody who didn't know what they were doing. They are general. All of them at least meet the general intent threshold. Although it's not spelled out in the common law, there's no accidental or negligent use of force or intimidation in any of these cases that we cited. And I looked as far back as I could, a couple hundred years, looking at ones that didn't even have head notes, which is a real challenge when you get used to that. There just isn't any. So I don't think that makes a difference. The two cases that she cited, and I don't think they did actually make the argument, I think she made it here, but I would say that both Gagum, which actually involved a little more maybe than what was summarized earlier, the defendant actually took a purse from the victim after staring at her in a frightening manner and told her, you're going to give me your purse. He pulled on her arm repeatedly and then pulled groceries out of her hands and threw them on the ground. That is clearly not some sort of de minimis encounter. And in the other case, it was the use of what anybody would perceive as a gun in the back of somebody. And so clearly another instance where the victim would think that this is the use of threatened force on them. So in those instances, I don't see how South Carolina strong-arm robbery could be anything but a violent felony. Now, the cases are not many that the defense has brought up. And the truth is the only one they really brought up and spent any time on is the Rosman case. And the Rosman case is a little more than what I think you may have heard earlier, because not only was there a glare, but before there was a glare, the Rosman came out of the bathroom where he had been for a few minutes, came around the counter to the cash register and started trying to open it, glared at the victim. She then moved away, but if you look at the testimony, it may be in the court of appeals where the trial testimony is laid out, but she says she's only a few feet away. And at that point, he flips the cash register, and then when that doesn't succeed in opening the cash register, he then slams it to the ground, which anyone nearby a few feet away would know it would be like saying, if you don't let me have this money, I'm going to body slam you. In fact, the reason Rosman went to the state supreme court is because the court of appeals also used the fact that Rosman, after he left, got into an encounter with the police and body slammed one of the police officers. So the state supreme court said you can't use that as a basis for what went on in the store, but it does show us that it would be a reasonable belief that if someone slams a cash register hard enough to break it open, that they might very well, if you got in their way, do the same thing with you. So the only other two points I guess I'd make is with regard to the mens rea. I think mens rea is now post-voicing recklessness. And again, no cases out there in South Carolina where there is anything less, and really it at least meets the recklessness standard. There's not a case you're going to find that would be negligent or accidental use of force. And then the final thing is with regard to being directed against a victim, the whole point of robbery is that it is larceny, but it's then larceny against a person because that's who's intimidated. That's why it's an elevated crime because you have. She has to part with the money in the ultimate. She's the guardian of the money. Correct. She's the one that has to part with it. It's basically she's the one that has to be overcome. That's correct, Your Honor. Yes. So for those reasons, the government believes that this is a clear case. McNeil controls and the South Carolina strong-arm robbery is a violent felony under the force clause. Mr. Daley, are you familiar with that pattern, your instruction there? I'm sorry, Your Honor. I'm not. I had the same. I was perplexed as well that we both pulled it up online because I think I called opposing counsel and said, you know, a month or two ago and said, what happened to the pattern? It wasn't just this one. It was they're all gone. So I don't know. You know, it's a mystery that I don't think any of us can solve. But I did not see that pattern, your instruction, that dealt with it being immaterial. I don't think there's any case law that says that, Your Honor. I'm not sure. As I recall, my clerk indicated that there wasn't any case citation. It was just sort of stuck there in the language of the charge. And this is just because I've been in South Carolina for a number of years. I know a few different judges at some point I think maybe sent in, suggested, or what they had used. And I don't know if that is how it started to get compiled. And perhaps somebody took a look at it and decided maybe. I don't know. I don't want to speculate. But those instructions are gone, and we can't seem to get. I called, and I couldn't get an answer exactly why they were taken down. Well, I hope judges are still charging juries with some form. I know of a case last week in Richland County in Columbia. They are still charging the juries. Yes, Your Honor. If the court has no further questions, we'll rest on our brief then for the rest. Thank you, Mr. Daly. Thank you. Ms. Harrell, do you have some time reserved? Thank you, Your Honor. A couple of things. I don't think McNeil specifically drives the outcome of this matter because McNeil is a case involving federal bank robbery. And while there is useful language in McNeil, it does not dictate whether South Carolina strong-arm robbery meets the definition of a violent felony. I don't understand why it wouldn't apply here because they both involve crimes that very often don't entail actual force in the sense that the teller doesn't feel a weapon in his or her ribs. But it involves the use of intimidation, which is, in fact, the way most of these robberies are committed through intimidation. It's a different kind of crime, I think, from burglary and larceny and many others which can occur, really, or even assault and battery, which can be involved, involve a minimum of force. And in some cases, with burglary and larceny, you don't have to have personal intimidation. And then assault and battery, you don't have to necessarily have anything more than a nominal touching. But here, it seems, both in McNeil and here, that this kind of robbery is accomplished, unlike those other crimes, by force, actual force, or threatened force, which translates to me as intimidation. In other words, I think this is different from burglary and larceny and assault and battery and some of those crimes which can be accomplished by, you know, fairly minimal and nonviolent, non-intimidating means. I don't think this can be accomplished with minimal and nonviolent means. It's different. I mean, all these crimes are not the same. They have different general characteristics. Well, I would say, Your Honor, that in McNeil, the use of force was, it's indicated that it needs to have a specific intent as to the use of force. You know, that you have to have some indication in the evidence that the defendant knew or intended that his actions were objectively intimidating. I think in the Wagstaff case, no, Woodroup, the individual leaped over the counter at the teller, and then after he was arrested, he said, Oh, my gosh, I sure hope she didn't have a heart attack. So that was some evidence that he knew his actions were objectively intimidating. I'm mighty glad that the woman who was robbed here didn't have a heart attack. I mean, she certainly could have, given what she was faced with. Well, Your Honor, I'd say that. . . It would cause my heart to beat rather quickly. Well, Your Honor, standing here, my heart is beating rather quickly. Well, I didn't mean to have that. We don't want your money, so we don't get the other elements. No, you certainly don't. In Rosemond, in the Supreme Court version of the facts, the victim testified that, yes, she was a few feet away from the petitioner, but when petitioner went behind the counter, Murray stated she ran behind the freezer door because she was scared. This is prior to him glaring at her. So a step up behind the counter was enough. And in response to the question about what exactly scared her, Murray stated, Just the way he looked. I mean, he didn't say anything. He didn't move toward anybody. Just the way, that's all.  And my time is up. Thank you, counsel. Thank you very much. We'll come down with Greek counsel and proceed to our next case.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Albert Diaz